**CASS COUNTY WELFARE DEPART-
MENT, Respondent,**

v.

**Melody WITTNER, Appellant,**

and

**Commissioner of Public Welfare,
intervenor, Respondent.**

**No. 51447.**

Supreme Court of Minnesota.

Aug. 21, 1981.

David J. Rasmussen, Anishinabe Legal Services, Inc., Cass Lake, for appellant.

Michael T. Milligen, County Atty., Walker, for Cass County Welfare Dept.

Warren Spannaus, Atty. Gen. and John Kirwin, Asst. Atty. Gen., St. Paul, for respondent.

Thomas Berg, U. S. Atty. and Mary Egan, Asst. U. S. Atty., Minneapolis, for U. S. Dept. of Justice.

Randolph W. Gaines and Gwenda D. Jones, Baltimore, Md., for U. S. Dept. of Health and Human Services.

SIMONETT, Justice.

The Cass County District Court, sitting as a three-judge panel, vacated an order of the Commissioner of the Department of Public Welfare (Department) finding that Melody Wittner had "good cause" for refusing to cooperate with the Cass County Welfare Department (County Agency) in establishing the paternity of her child. We granted Ms. Wittner's petition for review to this court. We agree with the district court that the County Agency had standing to appeal the Department's ruling to the district court and that the proceedings should be remanded to the Department to further evaluate the good-cause claim. Thus we affirm the district court.

Ms. Wittner gave birth to a child out of wedlock on September 5, 1975. Since December of that year, she has been receiving AFDC for her own support and that of her child. She reported to the County Agency that the child's father was unknown.

In late 1978 the Department began a procedure requiring aid recipients to cooperate with the local county agencies in establishing paternity and in collecting child support. In February 1979 the Cass County agency mailed a notice to its aid recipients, including Ms. Wittner, informing them of the cooperation requirements. Recipients were advised they could be excused from

cooperating for "good cause," *i. e.,* "if you believe that your cooperation would not be in the best interests of your child, and if you can provide evidence to support this."

On July 5, 1979, Ms. Wittner filed a good-cause claim with the County Agency, stating that her cooperation would "result in serious physical or emotional harm to the child(ren)" and that it was also "anticipated to result in physical or emotional harm to myself, which is so severe that it will reduce my ability to care for my child(ren) adequately." Ms. Wittner also filed an affidavit in which she stated she knew the child's father. She further stated, however, that the father hit her several times when told of her pregnancy; that he hit her on another occasion when she tried to discuss her pregnancy with him; that shortly after an argument concerning her pregnancy he shot a rifle into the air; that she has been fearful of her safety; and that the father said he would deny paternity. An affidavit by Ms. Wittner's sister was also submitted, confirming the rifle incident.

The County Agency denied the claim because Ms. Wittner's failure to disclose the putative father's identity prevented it from making an investigation. Ms. Wittner appealed to the Department, which, after a hearing, first affirmed the County Agency's decision, but then, because of revisions in the AFDC regulations, issued an amended order on September 17, 1979, reversing the County Agency's ruling.

The County Agency appealed to the district court, with the Commissioner of Public Welfare intervening. The district court, first, on a preliminary motion claiming lack of standing, refused to dismiss the appeal. Second, on the merits, the court vacated the Department's order as not supported by substantial evidence and remanded for further proceedings.

On her appeal here, Ms. Wittner raises three issues: (1) Did the County Agency have standing to appeal the Department's decision; (2) may the County Agency require an AFDC recipient to disclose the father of her child before considering her good-cause claim; and (3) is the decision of

the Department either not supported by substantial evidence, or arbitrary and capricious?

■ 1. Ms. Wittner contends that the County Agency has no standing to appeal a Department ruling. The County Agency, of course, claims it has standing and the Commissioner, as intervenor, agrees. The Department of Health and Human Services has filed an amicus brief arguing that federal law and regulations preclude an appeal by a local agency to the state court. We hold, as did the district court, that the County Agency has standing to appeal.

The AFDC program was established by Congress. 42 U.S.C. § 601 *et seq.* (1976). No state is required to participate, but a state that elects to do so and shares in federal funding must comply with federal laws and regulations. One federal requirement is that a "single state agency" be designated to administer or supervise the program. 42 U.S.C. § 602(a)(3) (1976). In Minnesota, the Department of Public Welfare is the designated agency. Minn.Stat. § 245.04 (1980). Federal regulations provide:

> In the event that any services are performed for the single State agency by other State or local agencies or offices, such agencies and offices must not have authority to review, change or disapprove any administrative decision of the single State agency, or otherwise substitute their judgment for that of the agency as to the application of policies, rules and regulations promulgated by the State agency.

45 C.F.R. § 205.100(b)(3) (1979). Appellant argues this regulation precludes the County Agency from seeking judicial review.

Appellant relies primarily on three cases, namely, *Reed v. New York State Department of Social Services,* 78 Misc.2d 266, 354 N.Y.S.2d 389 (1974); *Essex County Welfare Board v. Department of Institutions and Agencies,* 75 N.J. 232, 381 A.2d 349, *cert. denied,* 437 U.S. 910, 98 S.Ct. 3103, 57 L.Ed.2d 1141 (1978); and *Beaudoin v. Toia,* 45 N.Y.2d 343, 408 N.Y.S.2d 417, 380 N.E.2d

246 (1978), each holding that a local agency may not seek judicial review of a state agency determination concerning welfare eligibility. In *Reed*, the director of a local welfare agency was denied judicial review of a commissioner's decision, the court relying on the absence of statutory authority to seek review and on the "single state agency" concept. In *Essex County* the court ruled that the local agency's role in AFDC cases was merely that of a statutory administrator and that to allow judicial review would cause delay and uncertainty in administering the program. The court made clear, however, that the county itself would have standing to challenge an eligibility determination because it provides a substantial portion of the grant money. In *Beaudoin* the court reasoned that county commissioners of social services are, by statute, "agents" of the state department and do not act for the counties in making eligibility determinations; that state statutes made department decisions binding on local officials; and that federal law furthermore precluded judicial review because of the single state agency concept.

This case is not, however, like any of these three.[1] First, Minnesota, unlike New York and New Jersey, has enacted a statute conferring a right to seek review on local agencies. Minn.Stat. § 256.045, subd. 7 (1980), provides: "An applicant or recipient *or local agency* aggrieved by an order of the commissioner of welfare may appeal the order to the district court * * *." (Emphasis added.) If appellant's argument that the local agency is merely an administrative arm of the Department without independent interests would be accepted, the statutory term "local agency" becomes superfluous, contrary to the legislative mandate that "[e]very law shall be construed, if possible, to give effect to all its provisions." Minn.Stat. § 645.16 (1980). Second, although the county welfare board is primarily an administrative body charged with carrying out state programs under Department supervision, it is composed of the

board of county commissioners plus two other members. The county welfare board prepares the budget which the board of commissioners must approve and include in the tax levy, Minn.Stat. §§ 256.72 and 256.-80 (1980). The record indicates that Cass County contributes 17 to 18% of the monies paid to AFDC recipients. Plainly, the welfare board, acting as it does for the county, has a pecuniary interest here. Third, and equally important, allowing review will not disrupt administration of the program, since Minn.Stat. § 256.045, subd. 10 (1980), requires that assistance be paid during the pendency of an appeal. We hold, therefore, that the County Agency has standing under Minnesota law to seek judicial review of a decision of the Department.

Since the County Agency has standing under Minnesota law, it must next be determined if this statutory right of review conflicts with federal law. Appellant argues that Minn.Stat. § 256.045, subd. 7 (1980), contrary to the federal regulations, authorizes the local agency to "review, change, or disapprove any administrative decision of the single state agency." While a court challenge by a local agency may manifest disapproval, the disapproval is without legal effect. It is the court, not the local agency, which is empowered under the statute to review, change, or disapprove the commissioner's decision. Consequently, there is no violation of federal AFDC law. The Department's administrative authority is not limited any more than is normally the case under the Federal Administrative Procedure Act, 5 U.S.C. § 551 *et seq.* (1976); and the goal of uniform application of the AFDC law is not frustrated.

■ 2. We next consider whether the County Agency acted improperly by refusing to evaluate Ms. Wittner's good-cause claim because she failed to disclose the putative father's name. To establish good cause for failure to cooperate with child support efforts, an AFDC applicant or re-

---

1. Appellant and amicus also cite *Stephenson v. Creasy*, (S.D.Ohio 1980), but this case discusses the single state agency concept only in the context of an administrative reconsideration by the state agency of its own determination rather than judicial review.

cipient is required by 45 C.F.R. § 232.40(c) (1979) to state the circumstances believed to constitute good cause, corroborate those circumstances in accordance with section 232.-43, and, if requested, provide sufficient information (such as the putative father's name) to permit an investigation pursuant to section 232.43(g). Section 232.43(c) lists various types of corroborative records and statements that might be obtained, including law enforcement, social service and medical records and sworn statements from individuals other than the applicant or recipient. Section 234.43(g) says if the statement of the claim together with the corroborative evidence does not provide sufficient basis for making a determination, the agency may further verify the claim or conduct an investigation; this verification may, if necessary, include interviewing the putative father.

Ms. Wittner's good-cause claim was based on anticipated physical harm to herself and her child. As corroboration she submitted her sister's affidavit that the putative father had fired a rifle into the air following an argument about Ms. Wittner's pregnancy and that she believed he might harm Ms. Wittner if paternity were pursued. The caseworker, although she also felt the sister's statement concerned events too far in the past, admittedly denied the claim solely because of refusal to name the putative father.

It is clear from the regulations that the County Agency is required to make its inquiry in successive stages. Initially, the agency is to determine if good cause is established by the appellant's claim statement and corroborating evidence. Only if this information is inadequate may an investigation be undertaken, and even then circumstances may be such that the agency should first request additional corroboration before investigating. Here the County Agency acted arbitrarily by insisting on disclosure of the putative father's name without first determining if disclosure was necessary. The error is without prejudice, however, since the record reveals that the Department applied the proper method of analysis.

3. Finally, we examine the Department's ruling that Ms. Wittner had shown good cause to determine if it is supported by substantial evidence. Although decisions of administrative agencies are entitled to deference, we conclude on this record the Department's decision to grant Ms. Wittner's claim of good cause cannot be upheld. Both the claim statement and the corroborating affidavit concern events that occurred 4 years earlier, prior to the birth of the child. The sister's affidavit corroborates only one incident. There have been no more threatening incidents since the child's birth, nor, indeed, has Ms. Wittner even spoken with the putative father. We agree with the district court that absent more current information the Department's ruling is not supported by substantial evidence.

The district court remanded the case to the Department for further proceedings. As we see it, the County Agency should have notified Ms. Wittner that her claim and corroborating affidavit were insufficient and requested the putative father's name. The agency could then conduct an investigation to determine if good cause for not cooperating existed. Presumably the Department will have the County Agency do this now. We emphasize that the agency should act with circumspection, particularly since a potential for physical harm has been alleged. Perhaps mere disclosure of the putative father's name may be enough without the need for the agency to approach the putative father, as the agency may then have sufficient information from other sources to properly evaluate the good-cause claim.

Affirmed.